## NUGGETT M. BURKE v. D. E. BAY.[1]

September 25, 1925.

No. 24,673.

**Designation of beneficiary in insurance policy obtained by undue influence.**
1. The evidence in this case sustains the findings of the jury to the effect that the designation of the defendant as a beneficiary, in the insurance policy sued upon, was procured by undue influence practiced upon the insured on June 4, 1923, and that the plaintiff was entitled to recover the full amount of the policy.

**Rulings on evidence.**
2. There was no error in the rulings as to the admission of evidence.

1. See Life Insurance, 37 C. J. p. 636, § 438.
2. See Witnesses, 40 Cyc. p. 2745.

[1]Reported in 205 N. W. 219.

Action in the district court for Ramsey county to recover upon a life insurance policy. The case was tried before Michael, J., and a jury which returned a verdict in favor of plaintiff. Defendant appealed from an order denying his motion for judgment notwithstanding the verdict or for a new trial. Affirmed.

*John J. Keefe*, for appellant.

*McMeekin, Quinn & Swan* and *P. D. Scannell*, for respondent.

QUINN, J.

This action was brought by the plaintiff, Nuggett M. Burke, against the Brotherhood of America Yeomen, to recover upon an insurance policy for $2,000, issued by it to the plaintiff's mother, Nellie M. Burke, since deceased. The insurance company admitted its liability upon the policy and manifested its willingness to pay the same as soon as it was ascertained to whom it was payable. The appellant, Daniel E. Bay, made application to intervene and file an answer, claiming to be entitled to a one-half interest in and to the proceeds of the policy. The court made an order allowing Bay to intervene and requiring the insurance company to pay into court the sum of $2,000 to abide the result of the trial and, upon payment of such money into court, the insurance company to be discharged from liability on account of such policy. The order of the court was fully complied with. The defendant accordingly filed an answer, setting forth that he was entitled to one-half of the insurance under a change of beneficiary made by the insured on June 4, 1923. The plaintiff, in her reply, alleged that, at the time of the alleged signing of the request of a change of beneficiary, on June 4, 1923, set forth in the answer, the insured was not in a mental condition to understand or appreciate the nature or effect of her action and that, if she did have sufficient mental power to understand the nature or effect of her act, she signed the same by reason of undue influence practiced upon her by the defendant and her nurse. The issues were tried and submitted to a jury and a verdict returned in favor of the plaintiff. Defendant moved for judgment notwithstanding the verdict or for a new trial, and appealed from the order denying such motion.

The decisive question presented is as to the sufficiency of the evidence to sustain the verdict of the jury that the alleged change of beneficiary, of June 4, was obtained through undue influence. If it was, the verdict should stand; otherwise not. The material facts which the evidence tends to show are as follows:

Nellie G. Burke was a widow. Her only child was the plaintiff, Nuggett M. Burke, who lived with her mother in Saint Paul and attended school. The mother carried a life insurance policy for $2,000 with the Brotherhood of American Yeomen in which her daughter was named as the sole beneficiary. In December, 1918, the mother married the defendant, Daniel E. Bay, and they continued to reside in Saint Paul. About two years after their marriage, the mother became affected with cancer. She received treatment from Dr. I. J. Murphy during the summer and fall of 1921, and thereafter took up the practice of Christian Science. In August, 1922, she employed Belle Degolier as a nurse, who cared for her at the home in Saint Paul until May, 1923, when she accompanied the nurse to the latter's home in Clayton, Wisconsin, where she remained until the time of her death which occurred June 9, 1923. While the mother was at Clayton, the daughter visited her at the end of each week. The daughter was then 19 and the mother 38 years of age. The mother kept her insurance policies and other papers in a small cupboard in her home in Saint Paul. The daughter asked the defendant if she might read the policy over. He consented and she procured the policy and then discovered that the defendant's name had been included, as a beneficiary, with her own. She retained the policy, and consulted Mr. Scannell, an attorney. She then, accompanied by the attorney, went to Clayton, saw her mother, but said nothing about the policy. Later, however, the attorney had a talk with the insured and procured a request from her that the daughter be made the sole beneficiary. The request was sent to the insurance company and a new policy was issued, in accordance with the request, and properly returned.

While at Clayton, the mother continued to grow weaker and more frail, both mentally and physically. During the last week, she was unable to lie in bed, but remained sitting in a chair, night

and day. The defendant, under these circumstances, procured a blank request, such as was in use by the company for changing the beneficiary in a policy, took it with him to Clayton, but, upon his arrival there, the nurse requested him not to talk to his wife about the policy as she had told her that she had had more trouble about the policies than they were worth. The defendant then delivered the request which he had with him to the nurse for his wife to sign. On the following day, June 4, the nurse, according to her own statement, read and presented the request to Mrs. Bay, together with pen and ink, and the same was signed. It is conceded that, while his wife was at Clayton, he had spoken to her a number of times about the change, and the nurse states that she refused, saying she "wanted time to think it over."

Dr. Murphy was called by the plaintiff. He testified that he had treated the deceased; that, upon a careful examination made in 1921, he found in her pelvis, on the womb, that which had been pronounced cancer before she was sent to him, and that he confirmed the diagnosis and gave her treatment for it; that it was malignant and had spread and gotten into the lining of the abdominal cavity. The doctor also testified that such a condition eventually extends to the vital organs so as to interfere with nutrition and the general health of the patient so that, for a period before death, the patient is in a very weakened condition, both mentally and physically; that the fact that she was confined to a chair would seem to indicate that she was no longer able to help herself at all; that, as a rule, the cancer, before death, is on some part of the nervous system and the patient is usually, for several days more or less semiconscious; that they can be roused, but are far from being normal, either mentally or physically.

The defendant urges strongly that it was prejudicial error to receive, in evidence, two letters written by the nurse, Mrs. Degolier, to the defendant. There might have been some merit in the contention, but for the fact that the defendant had seen fit to call Mrs. Degolier as a witness and elicited from her testimony as to the patient's condition, both mentally and physically, during her

stay at Clayton, and as to the circumstances of the signing of the request for a change of the beneficiary on June 4, and as to the conduct of the defendant in connection therewith, all of which went to render the letters admissible on cross-examination. The testimony of Dr. Murphy, which was received under objection, was, in our opinion, clearly admissible.

Under the proofs in the instant case, a verdict either way would seem to be authorized by the evidence. It is a well settled rule that, in showing undue influence, there must be evidence to satisfy the jury that the free agency of the person signing the instrument was destroyed or interfered with to such an extent that the instrument does not express the wish and intent of the person signing it. We are satisfied that there is ample testimony in the record to justify the verdict and that there was no prejudicial error in the reception of evidence.

Affirmed.